JUDGE KENDALL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS MAGISTRATE JUDGE COX
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **09 CR    144** |
| | ) | |
| vs. | ) | No. _____ |
| | ) | Violation: Title 18 United |
| MARVIN BERKOWITZ, | ) | States Code, Sections 371, 1028A, 1341, |
|     also known as "Marvin | ) | 1343 and 2 |
|     Berk" and "Joseph | ) | |
|     Berkovicz," | ) | |
| DAVID BERKOWITZ, | ) | UNDER SEAL |
| ERIC BERKOWITZ, | ) | |
| YAIR BERKOWITZ, | ) | |
| FERNANDO BENALCAZAR, | ) | **FILED** |
| MARVIN HARRIS, | ) | Feb 17, 2009 |
| YOUSEF LEFKOWITZ, | ) | FEB 17 2009 |
| CHRISTOPHER MOORE, | ) | |
| KEVIN MURRAY, and | ) | MICHAEL W. DOBBINS |
| FRANKLIN NOVAK | ) | CLERK, U.S. DISTRICT COURT |

COUNT ONE

THE SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

1.    At times material to this indictment:

**Relevant Entities and Individuals**

a. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury. The IRS provided that certain taxpayers who were entitled to a refund of federal individual income taxes could claim that refund either by signing and filing in person or by mail a U.S. Individual Form 1040, 1040A, 1040EZ (collectively referred to hereinafter as "Form 1040"), or by participating in the "Electronic Filing" program.

b. MARVIN BERKOWITZ, also known as "MARVIN BERK" and "JOSEPH

BERKOVICZ," lived at 6738 N. Richmond Ave., Chicago, Illinois, until 2003, at which time he moved to Israel.

c. DAVID BERKOWITZ, the son of MARVIN BERKOWITZ, lived at 5822 West Olympic, Los Angeles, California, and 818 North Croft, West Hollywood, California.

d. ERIC BERKOWITZ, the son-in-law of MARVIN BERKOWITZ, lived in Chicago, Illinois. ERIC BERKOWITZ operated a business called B.B.'s Bagels, also referred to as B&B Bagels and BB's Bagels, located at 2835 W. Touhy Ave., Chicago, Illinois.

e. YAIR BERKOWITZ, also known as "YARI BERKOWITZ," the son of MARVIN BERKOWITZ, lived at 6738 N. Richmond Ave., Chicago, Illinois.

f. FERNANDO BENALCAZAR set up businesses named Mi Casa Financial, Mi Casa Developers and Mi Casa Recovery. BENALCAZAR lived in Warrenville, Illinois. In addition, BENALCAZAR rented locations at the following addresses to receive mail: 30104 Village Green Blvd., Warrenville, Illinois; 4024 W. Montrose Ave., Chicago, Illinois; 4409 N. Keystone Ave., Chicago, Illinois; and 6517 S. Kedzie Ave., Chicago, Illinois. BENALCAZAR had signature authority over at least ten bank accounts maintained at the following banks: Charter One, Citizens Bank & Trust, Bank of America, and Fifth Third Bank, held in the names of BENALCAZAR, Mi Casa Financial, Mi Casa Development and Mi Casa Recovery.

g. MARVIN HARRIS lived at 1909 West Balmoral Ave., Chicago Illinois.

2

In addition to his home address, HARRIS had access to mail delivered to, among other locations, 11260 T65 Road, Rapid River/Gladstone/Naor, Michigan, PO Box 250, Rapid River/Gladstone/Naor, Michigan, and 1202 N. Lake Shore Drive, Gladstone, Michigan. At the direction of MARVIN BERKOWITZ, HARRIS set up and had signature authority over at least four bank accounts at Charter One and TCF Bank, held in his own name and the name of Marvin Harris Enterprises.

h. YOUSEF LEFKOWITZ, lived at 736 Lefferts Ave., Brooklyn, New York. In addition to his home address, LEFKOWITZ had access to mail delivered to, among other locations, 39 West 37th St., New York, New York.

i. CHRISTOPHER MOORE lived at 17406 S. Lathrop Ave., East Hazelcrest, Illinois. With the assistance of MARVIN BERKOWITZ, MOORE set up a business named C. Moore & Associates, Inc. MOORE rented a commercial post office box at 831 W. Maple Ave., PMB 145, Homewood, Illinois. MOORE had signature authority over two Washington Mutual Bank accounts in the name of C. Moore & Associates, Inc.

j. KEVIN MURRAY lived at 5640 W. Hawthorne Ave., Berkeley, Illinois. With the assistance of MARVIN BERKOWITZ, MURRAY set up a business named K Murray Corporation. MURRAY had signature authority over a National Bank of Commerce ("NBC") account in the name of K Murray Corp. and also two TCF Bank accounts in the name of Kevin W. Murray.

k. FRANKLIN NOVAK lived variously at, 5524 Tomahawk Dr., Greensboro,

3

North Carolina, 919 Jefferson Dr., Charlotte, North Carolina, and at 10 Narkis Street, Jerusalem, Israel. NOVAK had signature authority over a Branch Bank and Trust ("BB & T") bank account, held in the name of NOVAK.

### The Conspiracy To Defraud the IRS and Various States

2. Beginning no later than in or around 2003, and continuing to on or around February 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> MARVIN BERKOWITZ, also known as
> "Marvin Berk" and "Joseph Berkovicz,"
> DAVID BERKOWITZ,
> ERIC BERKOWITZ,
> YAIR BERKOWITZ,
> FERNANDO BENALCAZAR,
> MARVIN HARRIS,
> YOUSEF LEFKOWITZ,
> CHRISTOPHER MOORE,
> KEVIN MURRAY, and
> FRANKLIN NOVAK

defendants herein, did conspire and agree with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, namely:

(a) to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the IRS of the Department of Treasury, an agency of the United States, in the ascertainment, computation, assessment and collection of the revenue, namely income taxes, in violation of Title 18, United States Code, Section 371; and

(b) to devise, intend to devise and participate in a scheme to defraud the IRS and

4

numerous state departments of revenue of money and property, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and it was foreseeable that for purposes of executing and attempting to execute such scheme, one or more members of the conspiracy would use and cause the use of the United States Postal Service and private and commercial interstate carriers, and the transmission of wire communications in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1341 and 1343.

## Overview

3.     It was part of the conspiracy that defendant MARVIN BERKOWITZ recruited and enlisted dozens of co-conspirators and associates to submit over 3,300 fraudulent federal and state income tax returns using identities of federal inmates, totaling over $20 million in claimed IRS refunds and over $15 million in claimed state refunds, and causing the IRS to issue actual tax refunds totaling in excess of $1.5 million, and various states to issue actual tax refunds totaling in excess of $ 2.5 million. Between 2003 and 2006, defendant MARVIN BERKOWITZ caused the proceeds of the fraud to be paid by check to, or for the benefit of, at least eight members of his family, including defendants MARVIN BERKOWITZ, YAIR BERKOWITZ, ERIC BERKOWITZ, and DAVID BERKOWITZ, in the total amount of at least $800,000.     These checks were issued from the bank accounts of defendants FERNANDO BENALCAZAR, MARVIN HARRIS, CHRISTOPHER MOORE, KEVIN MURRAY and FRANKLIN NOVAK, as well as bank accounts controlled by associates

recruited by MARVIN BERKOWITZ. Both before and after 2006, defendant MARVIN

BERKOWITZ and his family members, including defendants YAIR BERKOWITZ and

ERIC BERKOWITZ, were also paid cash proceeds of the fraud.

  4. It was further part of the conspiracy that various defendants prepared, caused

to be prepared and assisted in the preparation of in excess of 2,900 false federal income tax

returns (Forms 1040) and in excess of 400 false state income tax returns, which were filed

in the names and social security numbers of federal inmates without their knowledge or

consent. The false returns included various fictitious and false items, including, but not

limited to: addresses and phone numbers, deductions, business losses and expenses, credits,

and W-2 wage and 1099 income statements of earnings from employers. As a result of these

fictitious items, the false federal and state returns claimed tax refunds.

  5. It was further part of the conspiracy that various defendants forged and caused

the forging of the signature of the listed taxpayer on the above-mentioned false returns or

transmitted IRS 8453 forms (authorization to prepare and file electronic returns), which they

then filed and caused to be filed with the IRS and states variously through the United States

Mail and electronically.

  6. It was further part of the conspiracy that various defendants directed that the

federal and state tax refunds be mailed and direct deposited to dozens of addresses and bank

accounts, throughout the United States and Israel, to which they had access and control,

including their own addresses and bank accounts and addresses and bank accounts of friends,

relatives, and other associates. Defendants then negotiated or caused the negotiation of the refund checks, including through numerous banks and a currency exchange. Finally, defendants split the refund proceeds amongst themselves and distributed proceeds to additional members of the Berkowitz family.

### Use of Federal Inmates

7. It was part of the conspiracy that defendant MARVIN BERKOWITZ, and other individuals and associates working with and for defendant MARVIN BERKOWITZ, obtained the identities of federal inmates, including their names and social security numbers.

8. It was further part of the conspiracy that after defendant MARVIN BERKOWITZ obtained a federal inmate's identity, defendants prepared and filed and caused to be prepared and filed, both by mail and electronically, federal and state income tax returns in the names and social security numbers of federal inmates, without their knowledge or consent. These returns requested refunds based on, among other things, fictitious overwithholdings of taxes from W-2 wages and 1099 income, tax credits, business losses and deductions. These returns requested that the refunds be sent to various addresses and bank accounts to which defendants had access and control.

9. It was further part of the conspiracy that, when the IRS or state taxing agencies mailed a refund check based on a false tax return to an address to which defendants had access and control, defendants would deliver or cause the delivery of the checks to defendant MARVIN BERKOWITZ or other defendants, and forge and cause to be forged the signature

of the incarcerated taxpayer on the back of the check, and negotiate and cause the negotiation of the refund checks, including by depositing the refund checks into bank accounts or by cashing or causing them to be cashed at a currency exchange.

### Concealment

10.     It was further part of the conspiracy that the defendants concealed, misrepresented, and hid, and caused to be concealed, misrepresented and hidden the existence, purpose, and acts done in furtherance of the conspiracy.

### Overt Acts

11.     In furtherance of the conspiracy, and to effect the objects thereof, defendants MARVIN BERKOWITZ, DAVID BERKOWITZ, ERIC BERKOWITZ, YAIR BERKOWITZ, FERNANDO BENALCAZAR, MARVIN HARRIS, YOUSEF LEFKOWITZ, CHRISTOPHER MOORE, KEVIN MURRAY, and FRANKLIN NOVAK, together with other persons known and unknown to the Grand Jury, committed and caused the commission of one or more of the following overt acts in the Northern District of Illinois, Eastern Division, and elsewhere:

12.             MARVIN BERKOWITZ

(a).     Defendant MARVIN BERKOWITZ recruited others, including specifically Individual A and Individual B, to travel to various federal courthouses to collect certain personal information about federal inmates, including inmates' names, social security numbers, and offenses of convictions, and provide that information to   MARVIN

8

BERKOWITZ, for which MARVIN BERKOWITZ paid Individuals A and B.

(b).     Defendant MARVIN BERKOWITZ recruited others, including Individual C and Individual D, to assist him in the preparation of individual federal and state income tax returns using the identities of federal inmates, for which MARVIN BERKOWITZ paid Individuals C and D.

(c).     Defendant MARVIN BERKOWITZ provided false and fictitious IRS Forms 8453 (authorization to prepare and file electronic returns) in the names of federal inmates to Individuals C and D, falsely misrepresenting that the 8453 forms were signed by his "clients," who he claimed lived or worked overseas and who had consented to the electronic preparation of their tax returns.

(d).     From 2003 through at least February 2009, defendant MARVIN BERKOWITZ recruited numerous individuals to accept mail, including federal and state tax refund checks, and to permit direct deposit refunds into bank accounts they controlled. MARVIN BERKOWITZ paid and caused the payment of money to these individuals he recruited for the use of their addresses and bank accounts.

(e).     From 2003 through at least February 2009, defendant MARVIN BERKOWITZ instructed the individuals he recruited to variously cash the refund checks, mail the checks or cash proceeds of the refunds to addresses he controlled, including to a law firm in Jerusalem, Israel, or to hand deliver the checks or the cash proceeds to defendants ERIC BERKOWITZ, YAIR BERKOWITZ, FERNANDO BENALCAZAR, and KEVIN

MURRAY.

(f).  On or about November 11, 2004, pursuant to the instruction of defendant MARVIN BERKOWITZ, Individual J sent tax refund checks totaling $11,860 to MARVIN BERKOWITZ at "Garfinkel/Berkowitz, c/o Abamson Law Office" in Israel.  MARVIN BERKOWITZ directed both Individual J and Individual K to deal with defendant FERNANDO BENALCAZAR regarding the forwarding of tax refund checks to MARVIN BERKOWITZ, and the receipt of payment for forwarding the checks.

(g).  On or about January 4, 2005, pursuant to the instruction of defendant MARVIN BERKOWITZ, Individual G  provided an envelope to a commercial courier for pick-up at 39th and State in Chicago.  The envelope contained tax refund checks Individual G received at addresses he controlled and blank checks from bank accounts he was using to receive the direct deposit of tax refunds.  The courier delivered the envelope to Eric Berkowitz at B.B.'s Bagels.

(h).  On or about November 15, 2004, at the direction of defendant MARVIN BERKOWITZ, Individual L opened a bank account at National Grand Bank in Marblehead, Mass., using the name JAAHG Incorporated.  Individual L was instructed by MARVIN BERKOWITZ to deposit state and federal tax refund checks into that account.  Individual L received the refund checks at her home address, forwarded them to MARVIN BERKOWITZ via Federal Express per his instruction, subsequently received the checks back from MARVIN already endorsed, and then deposited the endorsed checks into Individual L's

account.

13. <u>MARVIN HARRIS</u>

(a).     From approximately 2003 through and including 2008, defendant MARVIN HARRIS, at the direction of defendant MARVIN BERKOWITZ, opened at least four bank accounts at Charter One Bank and TCF National Bank in his own name, or the names of business entities he controlled, including Marvin E. Harris Enterprises, Marvin Harris Enterprises, and NVT Construction. The accounts were used to receive deposits of tax refund proceeds. Defendant MARVIN BERKOWITZ paid defendant HARRIS a commission for the fraudulent refunds HARRIS received and forwarded to MARVIN BERKOWITZ and other co-conspirators.

(b).     From approximately 2003 through 2008, defendant HARRIS received in excess of $600,000 in federal and state income tax refunds which were direct deposited into his bank accounts. Further, over $300,000 in state and federal income tax refund checks were mailed to addresses to which HARRIS had access and control.

(c).     From at least 2003 through at least 2008, over $5 million in federal refunds were claimed on more than 600 federal income tax returns filed in the name of federal inmates which fraudulently listed defendant HARRIS's addresses at 1909 West Balmoral Ave., Chicago, 11260 T65 Road, Rapid River/Gladstone/Naor, Michigan, PO Box 250, Rapid River/Gladstone/Naor, Michigan, and 1202 N. Lake Shore Drive, Gladstone, Michigan, or bank accounts controlled by HARRIS.

(d). In approximately March and April 2004, at the direction of defendant MARVIN BERKOWITZ, defendant HARRIS distributed approximately $10,000 of the fraudulently obtained tax refund proceeds to one of MARVIN BERKOWITZ's sons from HARRIS's Charter One bank account.

(e). In approximately March 2004, at the direction of defendant MARVIN BERKOWITZ, defendant HARRIS paid approximately $2,000 of defendant DAVID BERKOWITZ's credit card expenses from the fraudulently obtained tax refund proceeds deposited into HARRIS's Charter One bank account.

(f). In approximately April 2004, at the direction of defendant MARVIN BERKOWITZ, defendant HARRIS provided MARVIN BERKOWITZ's wife, Individual F, with approximately $5,000 of the fraudulently obtained tax refund proceeds from HARRIS's Charter One bank account.

(g). In approximately April 2004, at the direction of defendant MARVIN BERKOWITZ, defendant HARRIS provided defendant ERIC BERKOWITZ's business, B.B.'s Bagel, approximately $9,500 of the fraudulently obtained tax refund proceeds from HARRIS's Charter One bank account.

(h). In January 2007, HARRIS opened a new account at TCF Bank and permitted the deposit of fraudulent federal and state income tax refunds into that account.

(i). On approximately February 7, 2007, defendant HARRIS mailed a Federal Express package to defendant MARVIN BERKOWITZ at "Garfinkle, Berkowitz and

Abramson Law Office, King George 16 B, 8th floor, Jerusalem, Israel," which included bank statements showing deposits of refunds, along with nineteen fraudulently obtained state and federal income tax refund checks, totaling in excess of $78,000, payable primarily to federal inmates.

(j)     On approximately February 1, 2009, defendant HARRIS mailed a Federal Express package to defendant MARVIN BERKOWITZ at "Garfinkel, Berkowitz and Abramson Law Office, Beit Hatayelet, 2 Beiter St., Floor 3, Jerusalam, Israel, 93386," which included, among other items, correspondence and mail from the IRS; social security earnings statements; eleven fraudulently obtained state and federal income tax refund and stimulus checks, totaling in excess of $29,000, at least six of which were payable to federal prisoners; and a handwritten tally sheet listing the refund checks and accounting for monies paid to defendant YAIR BERKOWITZ and containing a calculation of a 10% commission due HARRIS for forwarding the state and federal refund checks to MARVIN BERKOWITZ.

14.          CHRISTOPHER MOORE

(a).     In 2005, defendant MARVIN BERKOWITZ directed defendant CHRISTOPHER MOORE, for the purpose of receiving fraudulent refunds, to: (1) incorporate a business called C. Moore & Associates, Inc. with the State of Illinois; (2) open a commercial post office box in the name of C. Moore & Associates; (3) and to open a bank account in the name of C. Moore & Associates, Inc., at Washington Mutual Bank.

(b).     From late 2005 through at least January 2008, almost $130,000 in false

13

tax refund claims were made to the IRS, bearing the names of federal inmates as the taxpayers, and using defendant MOORE's home address and commercial post office box as the fraudulent taxpayer addresses.

(c).    In approximately 2005, at the direction of defendant MARVIN BERKOWITZ, defendant MOORE delivered fraudulently obtained tax refund checks that MOORE had received in the mail to defendant YAIR BERKOWITZ, for which MOORE received approximately $100 for each refund check he delivered.

(d).    At the direction of defendant MARVIN BERKOWITZ, defendant MOORE fraudulently endorsed the signature of the taxpayer payee on federal and state income tax refund checks he received on behalf of MARVIN BERKOWITZ.

(e).    From approximately December 2005 to at least May 2006, defendant MOORE deposited over $84,000 in federal and state income tax refunds into his Washington Mutual Bank account. During that same time frame, MOORE paid over $77,000 to other associates and co-schemers of defendant MARVIN BERKOWITZ, including defendants DAVID BERKOWITZ, KEVIN MURRAY, and wrote checks for the benefit of defendants ERIC BERKOWITZ and YAIR BERKOWITZ from his C. Moore & Associates, Inc., account. Pursuant to MARVIN BERKOWITZ's direction, MOORE took a commission for all the fraudulent refunds he received and forwarded to MARVIN BERKOWITZ or which were deposited into the C. Moore & Associates, Inc.'s bank account for MARVIN BERKOWITZ.

14

(f).     On approximately January 3, 2006, at the direction of defendant MARVIN BERKOWITZ, defendant MOORE deposited a federal tax refund check in the amount of $8,228, payable to a federal inmate, into the C. Moore & Associates, Inc.'s bank account and on January 11, 2006, MOORE provided defendant ERIC BERKOWITZ's business, B.B.'s Bagels, approximately $5,000 of the fraudulently obtained refund proceeds from MOORE's C. Moore & Associates, Inc. Washington Mutual bank account.

(g).     On approximately January 23, 2006, defendant MOORE and defendant MARVIN BERKOWITZ exchanged e-mails. Defendant MARVIN BERKOWITZ asked MOORE if he had received a package from his son YARI, and reminded MOORE that anything MOORE received from MARVIN could be immediately deposited. Defendant MOORE responded that he had received nothing from MARVIN's son, and that he would check with YARI later that afternoon, but that MOORE had received a call from defendant MURRAY stating that MURRAY would overnight a package to the post office box. MOORE promised MARVIN BERKOWITZ that he would check the post office box for the package that day.

15.                    KEVIN MURRAY

(a).     In approximately December 2003, defendant MARVIN BERKOWITZ directed defendant KEVIN MURRAY, for the purpose of receiving fraudulent refunds, to incorporate a business named K Murray Corporation with the State of Illinois.

(b).     In approximately December 2003, defendant MURRAY, also at the

direction of defendant MARVIN BERKOWITZ, opened a bank account at National Bank of Commerce in the name of K Murray Corp.

(c).    In 2004, defendant MURRAY received in excess of $79,000 in fraudulently obtained federal and state income refunds which were deposited into his K Murray Corp. account.

(d).    From at least 2004, through at least May 2006, defendant MURRAY permitted defendant MARVIN BERKOWITZ to use his address at 5640 W. Hawthorne Ave., Berkeley, Illinois, and K Murray Corp. bank account as a fraudulent taxpayer address and direct deposit bank account on over 80 federal income tax returns for federal inmates claiming over $700,000 in IRS tax refunds, and at least twelve state income tax returns for federal inmates claiming over $45,000 in state tax refunds.

(e).    Pursuant to defendant MARVIN BERKOWITZ's instructions, defendant MURRAY delivered fraudulently obtained tax refund checks to defendant ERIC BERKOWITZ, as well as to other associates recruited by MARVIN BERKOWITZ.

(f).    In approximately February and March 2004, at the direction of defendant MARVIN BERKOWITZ, defendant MURRAY provided MARVIN BERKOWITZ, MARVIN'S wife, and defendant ERIC BERKOWITZ, a total of over $18,000 of the fraudulently obtained tax refund proceeds from MURRAY's K Murray Corp. account.

(g).    In approximately July 2004, defendant MURRAY opened two other accounts at TCF Bank. From July 2004, until at least May 2006, MURRAY deposited

checks totaling approximately $40,000 into his TCF accounts from at least three of defendant MARVIN BERKOWITZ's associates, including defendants BENALCAZAR and MOORE.

(h).    Defendant MURRAY, at the direction of defendant MARVIN BERKOWITZ, picked up mail and tax refund checks from associates recruited by MARVIN BERKOWITZ.

(i).    Defendant MURRAY, at the direction of defendant MARVIN BERKOWITZ, personally delivered refund checks, checks and/or cash from the proceeds of the tax fraud to defendants ERIC and YAIR BERKOWITZ, as well as other associates recruited by MARVIN BERKOWITZ.

16.         FERNANDO BENALCAZAR

(a).    In approximately 2003-2004, defendant FERNANDO BENALCAZAR, for the purpose of receiving fraudulent refunds, incorporated businesses named Mi Casa Recovery and Mi Casa Developers with the State of Illinois.

(b).    From approximately January 2004 through October 2005, defendant BENALCAZAR opened at least ten bank accounts in his name and the names of Mi Casa Recovery, Mi Casa Developers, and Mi Casa Financial at Bank of America, Charter One, Citizens Bank & Trust and Fifth Third Bank.

(c).    In approximately September 2004, defendant BENALCAZAR recruited Individual D to use her bank account to receive and deposit fraudulently obtained tax refunds. BENALCAZAR also provided false powers of attorney in the names of federal

17

inmates, which he obtained from defendant MARVIN BERKOWITZ, to Individual D and her husband.

(d). Defendant BENALCAZAR paid Individual D for assisting MARVIN BERKOWITZ in the preparation of income tax returns.

(e). From approximately 2004 through May 2006, defendant BENALCAZAR received in excess of $800,000 in fraudulently obtained federal and state income tax refunds which were deposited into his accounts at Bank of America, Charter One, Citizens Bank & Trust and Fifth Third Bank.

(f). From at least 2004, through at least 2006, defendant BENALCAZAR permitted defendant MARVIN BERKOWITZ to use addresses BENALCAZAR controlled at 30104 Village Green Blvd., Warrenville, Illinois, 4024 W. Montrose, Chicago, Illinois, 4409 Keystone, Chicago, Illinois and 6517 S. Kedzie, Chicago, Illinois, and his bank accounts at Bank of America, Charter One, Citizens Bank & Trust and Fifth Third Bank, as fraudulent taxpayer addresses and direct deposit bank accounts on over 100 federal income tax returns for federal inmates claiming over $600,000 in federal tax refunds, and over 260 state income tax refunds payable to federal inmates deposited into his bank accounts, in the total amount of over $700,000.

(g). Upon the instructions of defendant MARVIN BERKOWITZ, in approximately December 2005, defendant BENALCAZAR assisted Individual E, who had been recruited by MARVIN BERKOWITZ, in opening an Illinois corporation called AZYG

18

Corporation and opening a bank account at Citizens Bank in the name of the AZYG Corporation. That corporation and its associated bank account were created and used exclusively to receive direct deposits of fraudulently obtained tax refunds. BENALCAZAR paid Individual E for receiving tax refunds on behalf of MARVIN BERKOWITZ.

(h). In approximately early 2006, defendant BENALCAZAR recruited and instructed Individual D's husband to mail approximately 100 envelopes from different mail boxes to ensure that the envelopes would be postmarked from different postal locations to conceal the origin of the mailings.

(i). Defendant BENALCAZAR endorsed fraudulently obtained tax refund checks in the names of federal inmates before negotiating said tax refund checks.

(j). From approximately August 2003 to May 2006, defendant BENALCAZAR collected fraudulently obtained tax refund checks from at least eight associates of defendant MARVIN BERKOWITZ, including defendant KEVIN MURRAY and Individuals D and E.

(k). Defendant BENALCAZAR paid commissions in excess of $140,000 to at least eleven of defendant MARVIN BERKOWITZ's associates for the fraudulently obtained tax refunds they received and forwarded to the defendants.

(l). At the direction of defendant MARVIN BERKOWITZ, defendant BENALCAZAR provided in excess of $350,000 from the proceeds of the tax fraud to, and paid expenses for, Berkowitz family members, including defendants DAVID, ERIC and

YAIR BERKOWITZ.

(m). At the direction of defendant MARVIN BERKOWITZ, defendant BENALCAZAR was compensated at least approximately $130,000 for his participation in the conspiracy from the proceeds of the tax fraud.

17. FRANKLIN NOVAK

(a). Defendant FRANKLIN NOVAK recruited at least ten individuals who agreed to allow NOVAK and defendant MARVIN BERKOWITZ to use their addresses and bank accounts to receive federal and state tax refunds for purported "clients" of MARVIN BERKOWITZ, by falsely claiming MARVIN BERKOWITZ was an accountant in Israel who had clients who lived or worked overseas and needed United States addresses to receive the clients' tax refunds. Defendant NOVAK instructed these individuals to forward all the tax refund checks to MARVIN BERKOWITZ at a law firm in Jerusalem, Israel, or directly to NOVAK in Jerusalem, Israel.

(b). Defendant NOVAK paid commissions in excess of $38,000 to the individuals he recruited for the use of their addresses or bank accounts to receive fraudulent tax refunds.

(c). Defendant NOVAK maintained two bank accounts at BB&T in the names of Franklin S. Novak and Franklin S. Novak c/o Individual I. From 2004 to 2007, NOVAK received in excess of $190,000 in fraudulently obtained federal and state income tax refunds deposited into his BB&T accounts.

(d).   From at least 2004, through at least 2008, in excess of $4.5 million in fraudulent federal tax refund claims were made in over 700 federal income tax returns filed with the IRS which listed the addresses and bank accounts of the individuals recruited by defendant NOVAK.

(e)  On or about December 8, 2008, Individual M e-mailed defendant NOVAK and told NOVAK that he had received a refund check for defendant MARVIN BERKOWITZ.  Individual M asked NOVAK what MARVIN BERKOWITZ wanted done with the check. Later that day, on December 8, 2008, NOVAK sent an e-mail response and instructed Individual M to send the refund check to him at "10 Narkis st., apt 5, Jerusalem, 92462, Israel," using Federal Express.

18.                     DAVID BERKOWITZ

(a).   From at least 2004, through at least 2006, almost $400,000 in federal and state refunds were claimed in over 70 federal and state income tax returns filed in the names of federal inmates, which listed defendant DAVID BERKOWITZ's two addresses in California as the fraudulent taxpayer addresses.

(b).   Defendant DAVID BERKOWITZ received or benefited from, in excess of $18,000 in payments from the proceeds of the tax fraud, including, but not limited to, payments from defendants MARVIN HARRIS, CHRISTOPHER MOORE, and FERNANDO BENALCAZAR.

(c).   Defendant DAVID BERKOWITZ received mail, including fraudulently

21

obtained tax refund checks, which were mailed to his residences in California. DAVID BERKOWITZ opened the mail, reported the names on and amounts of the refund checks to his father, defendant MARVIN BERKOWITZ, and then forwarded packages of the refund checks to MARVIN BERKOWITZ at various addresses, as directed by MARVIN BERKOWITZ.

(d). On or about November 5, 2005; November 14, 2005; November 28, 2005; and December 12, 2005, defendant DAVID BERKOWITZ exchanged e-mails with defendant MARVIN BERKOWITZ, detailing the state and federal refund checks DAVID BERKOWITZ had received, and further discussing when to send packages of the refund checks to MARVIN BERKOWITZ.

(e). On or about April 21, 2006, defendant DAVID BERKOWITZ exchanged an e-mail with defendant MARVIN BERKOWITZ, in which MARVIN BERKOWITZ requested the account name, number and bank name for a check DAVID BERKOWITZ was holding for MARVIN. Defendant MARVIN BERKOWITZ further instructed DAVID BERKOWITZ that defendant YAIR BERKOWITZ could convey the information to defendant FERNANDO BENALCAZAR.

(f). Defendant DAVID BERKOWITZ falsely stated to IRS agents on January 26, 2007, that he never opened the mail he received for his father MARVIN BERKOWITZ, was not aware the mail was even tax related, never discussed the contents of the mail with his father, and simply forwarded the mail to his father in Israel. Defendant DAVID

BERKOWITZ further claimed to have never received any compensation for receiving the mail for his father and sending it to him in Israel.

19.          ERIC BERKOWITZ

(a).   From at least 2003 through at least 2006, defendant ERIC BERKOWITZ collected and received in excess of $270,000 in fraudulently obtained cash and check proceeds from various associates of defendant MARVIN BERKOWITZ, including defendants MURRAY, MOORE, HARRIS, and BENALCAZAR.

(b).   During this same time, defendant ERIC BERKOWITZ delivered a list of names and entities to Individual H, instructing Individual H to write checks from her bank account payable to the individuals and entities on the list. Individual H was a person recruited by defendant MARVIN BERKOWITZ to receive tax refund checks. Individual H then wrote checks payable to those on the list while ERIC BERKOWITZ waited, and then gave them to ERIC BERKOWITZ. Individual H wrote approximately $37,000 in total checks payable to ERIC BERKOWITZ or his business, B.B.'s Bagels.

(c).   At times, defendant ERIC BERKOWITZ used the fraudulently obtained proceeds of the tax fraud for his own benefit, including to operate his business, B.B.'s Bagels.

(d).   On approximately June 14, 2006, and other dates, defendant ERIC BERKOWITZ collected fraudulently obtained tax refund checks from various associates recruited by defendant MARVIN BERKOWITZ, including from defendant MURRAY.

23

(e).    On May 19, 2006, at B.B.'s Bagels, defendant ERIC BERKOWITZ accepted seven checks totaling over $36,000 in tax refund fraud proceeds from defendant BENALCAZAR, which were written from BENALCAZAR's bank account. Immediately after BENALCAZAR left B.B.'s Bagels, ERIC BERKOWITZ was interviewed by IRS Agents, and said he was not aware of the source of the money for the seven checks, although he acknowledged that defendant MARVIN BERKOWITZ provided the money. ERIC BERKOWITZ voluntarily turned the checks over to the IRS Agents.

(f).    On May 25, 2006 and June 14, 2006, ERIC BERKOWITZ requested and/or received refund checks and additional checks written from co-conspirator bank accounts, including from defendants BENALCAZAR and MURRAY in an effort to recoup the money he lost from the checks turned over to the IRS on May 19, 2006.

20.                    YAIR BERKOWITZ

(a).    From at least 2003 through at least 2006, defendant YAIR BERKOWITZ collected and received in excess of $80,000 in cash and checks from the proceeds of the tax refund fraud from various associates recruited by defendant MARVIN BERKOWITZ, including from defendants MURRAY and BENALCAZAR, and Individuals D, E, G and H.

(b).    Defendant YAIR BERKOWITZ delivered a list of names and entities to Individual H, instructing Individual H to write checks from her bank account payable to the individuals and entities on the list. Individual H then wrote checks payable to those on the list while YAIR BERKOWITZ waited, and then gave them to YAIR BERKOWITZ.

24

Individual H wrote a $2,900 check payable to YAIR BERKOWITZ.

(c).    Defendant YAIR BERKOWITZ collected fraudulently obtained tax refund checks and cash from various associates recruited by defendant MARVIN BERKOWITZ, including from defendants MURRAY and MOORE, and Individual D.

(d).    Defendant YAIR BERKOWITZ paid Individual D for assisting MARVIN BERKOWITZ in the preparation of income tax returns.

(e).    On approximately June 1, 2006, defendant YAIR BERKOWITZ told defendant BENALCAZAR in a telephone conversation that BENALCAZAR needed to prepare duplicate replacement checks for the ones turned over to the IRS by his brother-in-law, defendant ERIC BERKOWITZ, on May 19, 2006. YAIR BERKOWITZ advised BENALCAZAR that some of the checks had been intended for YAIR.

21.            YOUSEF LEFKOWITZ

(a).    From at least 2004 through 2005, defendant YOUSEF LEFKOWITZ recruited at least two individuals in New York City who agreed to receive mail at their addresses. This mail included fraudulently obtained federal and state tax refunds, issued as a result of fraudulent tax claims filed or caused to be filed by defendant MARVIN BERKOWITZ with the IRS and various states.

(b).    Beginning by at least approximately November 2004, defendant LEFKOWITZ cashed checks for defendant MARVIN BERKOWITZ at Kingston Currency Exchange, located at 433 Kingston Ave., Brooklyn, New York, including the fraudulently

obtained tax refund checks which were mailed to the individuals at the two addresses in New York who had agreed to receive mail for LEFKOWITZ.

(c). Defendant YOUSEF LEFKOWITZ cashed at least 150 fraudulently obtained federal and state tax refund checks, totaling at least $399,000 at the Kingston Currency Exchange.

(d). On approximately February 28, 2005, defendant YOUSEF LEFKOWITZ cashed at least nine state or federal refund checks, including a federal tax refund check for the 2003 tax year payable to Prisoner T in the amount of $690 at the Kingston Currency Exchange.

(e). Among the checks defendant YOUSEF LEFKOWITZ cashed at the Kingston Currency Exchange on February 28, 2005, was a federal tax refund check for the 2003 tax year payable to Prisoner U in the amount of $392.

## Tax Returns and Refund Checks

22. In furtherance of this conspiracy, and to effect its objectives, defendants filed and caused to be filed by use of the United States mail with the Department of Treasury, Internal Revenue Service, or various states, the following false federal or state income tax returns, in the names of the following taxpayers, on or about the following dates, requesting refunds, or caused the issuance and delivery of a refund check by use of the United States mail on or about the following dates, and thus committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

| Overt Act | Item Mailed (Tax Year) | Tax Payer Name/ SSN | Taxpayer Address | | Refund Claimed or Refund Obtained | Mailed On Or About |
|---|---|---|---|---|---|---|
| a | 1040 Return (2003) | Prisoner A (XXX-XX-4567) | 69 | , IL | $10,015 | May 5, 2004 |
| b | 1040 Return (2003) | Prisoner B (XXX-XX-0147) | 11 O | ilay, | $3,345 | September 1, 2004 |
| c | 1040 Return (2000) | Prisoner C (XXX-XX-2907) | 28 | IL | $331 | October 12, 2004 |
| d | 1040 Refund (2005) | Prisoner D (XXX-XX-4197) | 19 C | | $9,718 | February 2, 2007 |
| e | 1040 Refund (2005) | Prisoner E (XXX-XX-3867) | 19 C | | $9,940 | February 2, 2007 |
| f | 1040 Refund (2005) | Prisoner F (XXX-XX-5181) | 12 D | | $7,284.38 | December 22, 2006 |
| g | 1040 Refund (2005) | Prisoner G (XXX-XX-5542) | 63 W | 3 | $9,469.14 | February 2, 2007 |
| h | 1040 Return (2002) | Prisoner H (XXX-XX-3375) | 58 A | os | $2,822 | December 29, 2004 |
| i | 1040 Return (2001) | Prisoner I (XXX-XX-9485) | 58 A | os | $3,211 | December 31, 2004 |
| j | State of Illinois 1040 Refund (2005) | Prisoner J (XXX-XX-1555) | 20 Pa | r | $3,916 | May 18, 2006 |
| k | 1040 Return (2003) | Prisoner K (XXX-XX-4410) | 10 | e, LA | $9,615 | June 8, 2004 |
| l | 1040 Return (2001) | Prisoner L (XXX-XX-9492) | 11 M | River, | $9,241 | August 10, 2004 |
| m | 1040 Return (2003) | Prisoner M (XXX-XX-6044) | 56 IL | eley, | $3,143 | October 18, 2004 |
| n | 1040 Return (2002) | Prisoner N (XXX-XX-3563) | PC | OH | $3,341 | August 31, 2004 |
| o | 1040 Return (2004) | Prisoner O (XXX-XX-6869) | 14 La | | $6,756 | June 4, 2005 |
| p | 1040 Refund (2005) | Prisoner P (XXX-XX-7098) | 81 Hc | | $9,741 | Nov. 24, 2006 |

| | | | | | |
|---|---|---|---|---|---|
| q | 1040 Refund (2005) | Prisoner Q (XXX-XX-5211) | | $9,805 | Nov. 24, 2006 |
| r | 1040 Refund (2004) | Prisoner R (XXX-XX-6585) | | $8,228 | Dec. 23, 2005 |
| s | 1040 Refund (2001) | Prisoner S (XXX-XX-1708) | | $2,776 | July 2, 2004 |
| t | 1040 Refund (2003) | Prisoner T (XXX-XX-5304) | | $690 | Nov. 12, 2004 |
| u | 1040 Refund (2003) | Prisoner U (XXX-XX-8484) | | $392 | Oct. 22, 2004 |
| v | 1040 Refund (2003) | Prisoner V (XXX-XX-6766) | | $3,535 | Sept. 24, 2004 |
| w | 1040 Refund (2003) | Prisoner W (XXX-XX-7325) | | $3,898 | Jan. 7, 2005 |
| x | 1040 Refund (2005) | Prisoner X (XXX-XX-1380) | | $5,409 | Apr. 7, 2006 |

## **Direct Deposit Refunds**

23.     In furtherance of this conspiracy, and to effect its objectives, defendants negotiated and caused to be wired interstate the following direct deposit federal income tax refunds, in the following amounts, made payable to the following taxpayers, on or about the following dates, at the following financial institutions, and thus committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

| Overt Act | Amount of Refund/ Tax Year | Tax Payer Name/ SSN | Date of Wire Deposit | Bank Account Receiving Interstate Wire Deposit from IRS |
|---|---|---|---|---|
| a | $9,871.00 Tax Year 2003 | Prisoner Y (XXX-XX-7631) | February 20, 2004 | Charter One Bank Acct. XXXX2139 |
| b | $9,580 Tax Year 2003 | Prisoner Z (XXX-XX-2569) | March 19, 2004 | Broadway Bank XXXX6801 |
| c | $9,626 Tax Year 2003 | Prisoner AA (XXX-XX-1256) | March 19, 2004 | Broadway Bank XXXX6801 |
| d | $3,372 Tax Year 2003 | Prisoner BB (XXX-XX-2146) | March 19, 2004 | Citizens Bank & Trust XXXX3853 |

In violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE

### Wire Fraud

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraph 1 of Count One of this Indictment as though fully set forth herein.

2. Beginning no later than in or around 2003, and continuing to on or around February 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

MARVIN BERKOWITZ, also known as
"Marvin Berk" and "Joseph Berkovicz,"
DAVID BERKOWITZ,
ERIC BERKOWITZ,
YAIR BERKOWITZ,
FERNANDO BENALCAZAR,
MARVIN HARRIS,
YOUSEF LEFKOWITZ,
CHRISTOPHER MOORE,
KEVIN MURRAY, and
FRANKLIN NOVAK

defendants herein, devised and intended to devise, and participated in a scheme to defraud and to obtain money and property from the IRS and various state departments of revenue, by means of materially false and fraudulent pretenses, representations, and promises, and in furtherance thereof used the United States Postal Service, private or commercial interstate carriers, and interstate and foreign wires, which scheme is described in paragraphs 3 through 21 of Count One of this indictment, which paragraphs are realleged and incorporated as

30

though set forth herein.

      3. On or about the dates listed below, each such date constituting a separate count of this indictment, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants set forth below, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce as listed below, by means of wire and radio communications, certain writings, signs and signals, namely: wire transfers of federal income tax refunds from Austin, Texas, to bank accounts located in the Northern District of Illinois, and in the amounts as set forth below:

| Count | Defendants | Amount of Refund to Taxpayer/ Tax Year | Date of Wire Deposit | Bank Acct. Receiving Interstate Wire Deposit from IRS |
|---|---|---|---|---|
| 2 | MARVIN BERKOWITZ and MARVIN HARRIS | $9,871 payable to Prisoner Y (XXX-XX-7631) Tax Year 2003 | Feb. 20, 2004 | Charter One Bank Acct. XXXX2139 |
| 3 | MARVIN B BERKOWITZ, ERIC BERKOWITZ, and YAIR BERKOWITZ | $9,580 payable to Prisoner Z (XXX-XX-2569) Tax Year 2003 | March 19, 2004 | Broadway Bank XXXX6801 |
| 4 | MARVIN B BERKOWITZ, ERIC BERKOWITZ, and YAIR BERKOWITZ | $9,626 payable to Prisoner AA (XXX-XX-1256) Tax Year 2003 | March 19, 2004 | Broadway Bank XXXX6801 |
| 5 | MARVIN BERKOWITZ and FERNANDO BENALCAZAR | $3,372 payable to Prisoner BB (XXX-XX-2146) Tax Year 2003 | March 19, 2004 | Citizens Bank & Trust XXXX3583 |

      In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.     On or about February 21, 2007, in the Northern District of Illinois,

### MARVIN BERKOWITZ,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited for delivery with Federal Express, an interstate commercial carrier, and sent according to the directions thereon, a package from Chicago, Illinois, addressed to Garfinkle/Berkowitz Abramson Law Office, King George, 16B, 8th Floor, Jerusalem, Israel, which package contained tax refund checks, including a check issued by the IRS, payable to Prisoner F, in the amount $7,284.38;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT SEVEN

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.     On or about March 23, 2007, in the Northern District of Illinois,

### MARVIN BERKOWITZ,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited for delivery with Federal Express, an interstate commercial carrier, and sent according to the directions thereon, a package from Chicago, Illinois, addressed to Garfinkle/Berkowitz Abramson Law Office, King George, 16B, 8th Floor, Jerusalem, Israel, which package contained tax refund checks, including a check issued by the IRS, payable to Prisoner G, in the amount $9,469.14;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT EIGHT

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.      On or about March 5, 2007, in the Northern District of Illinois,

MARVIN BERKOWITZ,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited from Israel for delivery by U.S. mail, according to the directions thereon, an envelope with the return address of "Abramson Law Office, King George, 16-B-8FL, Jerusalem, Israel," which contained U.S. currency in the amount of $2,750, representing payment of a 10% commission for receipt and forwarding of fraudulently obtained tax refund checks, which envelope was addressed and delivered to an address in Willowbrook, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

34

## COUNT NINE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.      On or about April 5, 2007, in the Northern District of Illinois,

### MARVIN BERKOWITZ,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited from Israel for delivery by U.S. mail, according to the directions thereon, an envelope with the return address of "Abramson Law Office, King George, 16-B-8FL, Jerusalem, Israel," which contained U.S. currency in the amount of $ 1,000, representing payment of a 10% commission for receipt and forwarding of fraudulently obtained tax refund checks, which envelope was addressed and delivered to an address in Willowbrook, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT TEN

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.     On or about February 7, 2007, in the Northern District of Illinois,

MARVIN BERKOWITZ, and
MARVIN HARRIS

defendants herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited for delivery with Federal Express, an interstate commercial carrier, and sent according to the directions thereon, a package from Chicago, Illinois, addressed to Garfinkle/Berkowitz Abramson Law Office, King George, 16B, 8th Floor, Jerusalem, Israel, which package contained nineteen state and federal tax refund checks, totaling in excess of $78,000, payable to at least fifteen federal inmates;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT ELEVEN

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2.     On or about February 1, 2009, in the Northern District of Illinois,

MARVIN BERKOWITZ, and
MARVIN HARRIS

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be deposited for delivery with Federal Express, an interstate commercial carrier, and sent according to the directions thereon, a package from Skokie, Illinois, addressed to "Garfinkel, Berkowitz and Abramson Law Office, Beit Hatayelet, 2 Beiter St., Floor 3, Jerusalam, Israel, 93386," which package contained tax refund and stimulus checks, including a check issued by the IRS, payable to Prisoner CC in the amount $1,200.

In violation of Title 18, United States Code, Sections 1341 and 2.

<u>COUNTS TWELVE THOUGH THIRTY-FIVE</u>

**Mail Fraud**

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.      The Grand Jury realleges and incorporates by reference paragraphs 1 through 2 of Count Two of this Indictment as though fully set forth herein.

2. On or about the dates listed below, each such date constituting a separate count of this indictment, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants set forth below, for the purpose of executing the above-referenced scheme, and attempting to do so, did knowingly cause federal and state income tax returns and refunds, to be delivered through the United States mails according to the directions thereon, the matters and things listed below:

| Count | Defendants | Item Mailed | Refund Claimed/ Refund Obtained | Date of Mailing | Location of Sent or Delivered Mail |
|-------|------------|-------------|----------------------------------|-----------------|-------------------------------------|
| 12 | MARVIN BERKOWITZ | 2003 1040 Return in the name of Prisoner A (XXX-XX-4567) | $10,015 | On or about May 5, 2004 | Fox Valley, IL |
| 13 | MARVIN BERKOWITZ | 2003 1040 Return in the name of Prisoner B (XXX-XX-0147) | $3,345 | On or about Sept. 1, 2004 | Chicago, IL |
| 14 | MARVIN BERKOWITZ | 2000 1040 Return in the name of Prisoner C (XXX-XX-2907) | $331 | On or about Oct. 12, 2004 | Chicago, IL |
| 15 | MARVIN BERKOWITZ and MARVIN HARRIS | 2005 1040 Refund in the name of Prisoner D (XXX-XX-4197) | $9,718 | On or about Feb. 2, 2007 | Chicago, IL |
| 16 | MARVIN BERKOWITZ and MARVIN HARRIS | 2004 1040 Refund in the name of Prisoner E (XXX-XX-3867) | $9,940 | On or about Feb. 2, 2007 | Chicago, IL |

| 17 | MARVIN BERKOWITZ | 2005 1040 Refund in the name of Prisoner F (XXX-XX-5181) | $7,284.38 | On or about Dec. 22, 2006 | Downers Grove, IL |
|----|------------------|----------------------------------------------------------|-----------|---------------------------|--------------------|
| 18 | MARVIN BERKOWITZ | 2005 1040 Refund in the name of Prisoner G (XXX-XX-5542) | $9,469.14 | On or about Feb. 2, 2007 | Willowbrook, IL |
| 19 | MARVIN BERKOWITZ and DAVID BERKOWITZ | 2002 1040 Return in the name of Prisoner H (XXX-XX-3375) | $2,822 | On or about Dec. 29, 2004 | Chicago, IL |
| 20 | MARVIN BERKOWITZ and DAVID BERKOWITZ | 2001 1040 Return in the name of Prisoner I (XXX-XX-9485) | $3,211 | On or about Dec. 31, 2004 | Chicago, IL |
| 21 | MARVIN BERKOWITZ and ERIC BERKOWITZ | 2005 State of Illinois 1040 Refund in the name of Prisoner J (XXX-XX-1555) | $3,916 | On or about May 18, 2006 | Hanover Park, IL |
| 22 | MARVIN BERKOWITZ and FERNANDO BENALCAZAR | 2003 1040 Return in the name of Prisoner K (XXX-XX-4410) | $9,615 | On or about June 8, 2004 | Chicago, IL |
| 23 | MARVIN BERKOWITZ and MARVIN HARRIS | 2001 1040 Return in the name of Prisoner L (XXX-XX-9492) | $9,241 | On or about Aug. 10, 2004 | Carol Stream, IL |
| 24 | MARVIN BERKOWITZ and KEVIN MURRAY | 2003 1040 Return in the name of Prisoner M (XXX-XX-6044) | $3,143 | On or about Oct. 18, 2004 | Chicago, IL |
| 25 | MARVIN BERKOWITZ and FRANKLIN NOVAK | 2002 1040 Return in the name of Prisoner N (XXX-XX-3563) | $3,341 | On or about Aug. 31, 2004 | Chicago, IL |
| 26 | MARVIN BERKOWITZ and FRANKLIN NOVAK | 2004 1040 Return in the name of Prisoner O (XXX-XX-6869) | $6,756 | On or about June 4, 2005 | Chicago, IL |
| 27 | MARVIN BERKOWITZ and DAVID BERKOWITZ | 2005 1040 Refund in the name of Prisoner P (XXX-XX-7098) | $9,741 | On or about Nov. 24, 2006 | Hollywood, CA |
| 28 | MARVIN BERKOWITZ and DAVID BERKOWITZ | 2005 1040 Refund in the name of Prisoner Q (XXX-XX-5211) | $9,805 | On or about Nov. 24, 2006 | W. Hollywood, CA |

| 29 | MARVIN BERKOWITZ and CHRISTOHER MOORE | 2004 1040 Refund in the name of Prisoner R (XXX-XX-6585) | $8,228 | On or about Dec. 23, 2005 | Hazel Crest, IL |
|----|---|---|---|---|---|
| 30 | MARVIN BERKOWITZ and FRANKLIN NOVAK | 2001 1040 Refund in the name of Prisoner S (XXX-XX-1708) | $2,776 | On or about July 2, 2004 | Charlotte, NC |
| 31 | MARVIN BERKOWITZ and YOUSEF LEFKOWITZ | 2003 1040 Refund in the name of Prisoner T (XXX-XX-5304) | $690 | On or about Nov. 12, 2004 | Niles, IL |
| 32 | MARVIN BERKOWITZ and YOUSEF LEFKOWITZ | 2003 1040 Refund in the name of Prisoner U (XXX-XX-8484) | $392 | On or about Oct. 22, 2004 | Lake in the Hills, IL |
| 33 | MARVIN BERKOWITZ and FERNANDO BENALCAZAR | 2003 1040 Refund in the name of Prisoner V (XXX-XX-6766) | $3,535 | On or about Sept. 24, 2004 | Chicago, Il |
| 34 | MARVIN BERKOWITZ and FERNANDO BENALCAZAR | 2003 1040 Refund in the name of Prisoner W (XXX-XX-7325) | $3,898 | On or about Jan. 7, 2005 | Oswego, IL |
| 35 | MARVIN BERKOWITZ and CHRISTOHER MOORE | 2005 1040 Refund in the name of Prisoner X (XXX-XX-1380) | $5,409 | On or about Apr. 7, 2006 | E. Hazel Crest, IL |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THIRTY-SIX

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 29, 2004, in the Northern District of Illinois, Eastern Division,

MARVIN BERKOWITZ,

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name and Social Security number XXX-XX-3375, issued to Prisoner H, during and in relation to a mail fraud scheme in violation of Title 18, United States Code, Section 1341, as described in Count 19 of this indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

41

## COUNT THIRTY-SEVEN

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about May 18, 2006, in the Northern District of Illinois, Eastern Division,

MARVIN BERKOWITZ,

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name and Social Security number XXX-XX-1555, issued to Prisoner J, during and in relation to a mail fraud scheme in violation of Title 18, United States Code, Section 1341, as described in Count 21 of this indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT THIRTY-EIGHT

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 22, 2006, in the Northern District of Illinois, Eastern Division,

## MARVIN BERKOWITZ

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name and Social Security number XXX-XX-5181, issued to Prisoner F, during and in relation to a mail fraud scheme in violation of Title 18, United States Code, Section 1341, as described in Count 17 of this indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT THIRTY-NINE

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about December 31, 2004, in the Northern District of Illinois, Eastern Division,

### MARVIN BERKOWITZ,

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name and Social Security number XXX-XX-9485, issued to Prisoner I, during and in relation to a mail fraud scheme in violation of Title 18, United States Code, Section 1341, as described in Count 20 of this indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

44

## COUNT FORTY

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about February 20, 2004, in the Northern District of Illinois, Eastern Division,

## MARVIN BERKOWITZ,

defendant herein, did knowingly possess and use, without lawful authority, a means of identification of another person, namely, the name and Social Security number XXX-XX-7631, issued to Prisoner Y, during and in relation to a wire fraud scheme in violation of Title 18, United States Code, Section 1343, as described in Count 2 of this indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT FORTY-ONE

THE SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

On or about February 2, 2007, in the Northern District of Illinois, Eastern Division,

## MARVIN BERKOWITZ,

defendant herein, did knowingly possess and use, without lawful authority, a means of

identification of another person, namely, the name and Social Security number

XXX-XX-5542, issued to Prisoner G, during and in relation to a mail fraud scheme in

violation of Title 18, United States Code, Section 1341, as described in Count 18 of this

indictment;

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

46

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1.     The allegations contained in Counts One through Thirty-Five of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of their violations of Title 18, United States Code, Sections 1341 and 1343, as alleged in the foregoing Indictment,

MARVIN BERKOWITZ, also known as
"Marvin Berk" and "Joseph Berkovicz,"
DAVID BERKOWITZ,
ERIC BERKOWITZ,
YAIR BERKOWITZ,
FERNANDO BENALCAZAR,
MARVIN HARRIS,
YOUSEF LEFKOWITZ,
CHRISTOPHER MOORE,
KEVIN MURRAY, and
FRANKLIN NOVAK

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include

47

but are not limited to funds in the amount of $4,000,000 including but not limited to the following property:

    (a)    all funds contained in account number xxx0241 TN held at UBS Financial Service, Inc, in the name of Individual F;

    (b)    all funds contained in account number xxxxxx1614 held at Charter One Bank in the name of Mi Casa Recovery;

    (c)    all funds contained in account number xxxxxx5807 held at Fifth Third Bank in the name of Mi Casa Recovery;

    (d)    all funds contained in account number xxxxxx0455 held at Bank of America in the name of Mi Casa Developers;

    (e)    all funds contained in account number xxxxxx4509 held at Bank of America in the name of Mi Casa Recovery;

    (f)    funds in the amount of $4,488.86 seized on 11/14/08 from TCF Bank account number XXXXXX7323 held in the name of Marvin Harris;

    (g)    all funds contained in account number xxxx495 held at Citizen Bank and Trust in the name of AZYG Corporation;

    (h)    all funds contained in account number xxxxxx7762 held at TCF Bank in the name of Individual G;

    (i)    all funds contained in account number xxxxx1868 held at JP Morgan Chase in the name of Individual G;

    (j)    all funds contained in account number xxxxx6801 held at Broadway Bank in the name of Individual H; and

4.    If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

    (a)    Cannot be located upon the exercise of due diligence;

(b)     Has been transferred or sold to, or deposited with, a third party;

(c)     Has been placed beyond the jurisdiction of the Court;

(d)     Has been substantially diminished in value; or

(e)     Has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), including but not limited to the following:

(a)     Real property located at 11260 T.65 Road, Rapid River, Michigan,

legally described as follows:

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATED
IN THE TOWNSHIP OF MASONVILLE IN DELTA COUNTY, AND
STATE OF MICHIGAN, AND DESCRIBED AS FOLLOWS:

THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER
(SE 1/4 OF SW 1/4) AND THE SOUTHWEST QUARTER OF THE
SOUTHEAST QUARTER (SW 1/4 OF SE 1/4), BOTH OF SECTION
NINE (9);

THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER
(NW 1/4 OF NW 1/4), THE NORTHEAST QUARTER OF THE
NORTHWEST QUARTER (NE 1/4 OF NW 1/4) AND THE
SOUTHWEST QUARTER OF THE NORTHWEST QUARTER (SW
1/4 OF NW 1/4), ALL OF SECTION SIXTEEN (16);

THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER
(SE 1/4 OF NE 1/4), THE EAST HALF OF THE NORTHEAST
QUARTER OF THE NORTHEAST QUARTER (E ½ OF NE 1/4 OF
NE 1/4), AND THE WEST HALF OF THE NORTHEAST QUARTER
OF THE NORTHEAST QUARTER (W ½ OF NE 1/4 OF NE 1/4),

ALL OF SECTION SEVENTEEN (17);

ALL OF THE ABOVE PROPERTY BEING LOCATED IN TOWNSHIP FORTY-ONE (41) NORTH, RANGE TWENTY-ONE (21) WEST.

Parcel I.D.: 21-012-167-001-00

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY